## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Cyrus Carr, III, | * | |
| On behalf of himself and those similarly situated, | * | Case No. 2:21-cv-5140 |
| | * | Magistrate Judge Kimberly A. Jolson |
| Plaintiff, | * | |
| v. | * | |
| Austin Powder Company, | * | |
| Defendant. | * | |

---

### *JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE*

---

## I.    <u>INTRODUCTION</u>

Representative Plaintiff Cyrus Carr, III ("Representative Plaintiff" or "Carr") and Defendant Austin Powder Company ("Defendant" or "APC") (Representative Plaintiff and Defendant are, collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. Representative Plaintiff's Rule 23 claims, which were not certified by this Court, are being dismissed without prejudice.[1] The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations over the course of several months.

The following documents are submitted for the Court's review and approval:

Exhibit 1: Collective Action Settlement Agreement and Release (the "Agreement").[2]

Exhibit 2: Declarations of Daniel I. Bryant and Matthew J.P. Coffman.

---

[1] Although these claims are dismissed without prejudice, all plaintiffs who have joined this action will release all Ohio claims against Defendant through the Settlement, if approved.

[2] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Agreement.

Exhibit 3: Proposed Notice of Settlement.

Exhibit 4: Proposed Order.

Respectfully Submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Kelsie N. Hendren (100041)
1550 Old Henderson Rd.
Suite #126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com
khendren@mcoffmanlegal.com

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
4400 N. High St., Suite 310
Columbus, Ohio 43214
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Counsel for Named Plaintiff and those similarly situated*

**FISHER & PHILLIPS LLP**

*/s/ Richard A. Millisor*
Richard A. Millisor (0062883)
James M. Patrick (0088026)
Fisher & Phillips LLP
200 Public Square, Suite 4000
Cleveland, Ohio 44114
(440) 838-8800 - Telephone
(440) 838-8805 - Facsimile
rmillisor@fisherphillips.com
jpatrick@fisherphillips.com

*Attorneys for Defendant*

2

## MEMORANDUM IN SUPPORT

### I. FACTUAL AND PROCEDURAL BACKGROUND.

The proposed Settlement will resolve bona fide disputes involving alleged unpaid compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, *et seq.* ("Ohio Wage Act"); the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"); and O.R.C. § 2307.60 (the Ohio Wage Act, the OPPA, and O.R.C. § 2307.60 collectively, "Ohio Acts").

On October 27, 2021, Representative Plaintiff filed his Complaint alleging that Defendant failed to pay him, and other similarly situated hourly, non-exempt production/manufacturing/field employees of Defendant, for all overtime due to: (1) alleged non-neutral rounding of compensable hours that over time resulted in the underpayment of wages; (2) alleged unpaid, but interrupted, daily meal periods of thirty (30) minutes; and (3) the alleged failure to pay at the correct regular rate of pay during workweeks when employees worked overtime and received non-discretionary renumeration, including a Safety/Production bonus, in addition to their base hourly wage. (*See* ECF No. 1, Complaint, at PAGEID # 4–8). Representative Plaintiff claimed that this failure resulted in unpaid wages in violation of the FLSA and the Ohio Acts during workweeks when he and other production/manufacturing/field employees worked forty (40) or more hours. (*Id.*)

On December 17, 2021, Defendant filed its Answer, denied the allegations contained in the Complaint, maintained that Representative Plaintiff and those who he sought to represent were paid for all hours worked, maintained that any alleged unpaid time was *de minimis*, and asserted fifteen (15) affirmative defenses, including that its conduct was done in good faith in conformity with and reliance upon written regulations, orders, rulings, approvals, and interpretations of written and unwritten administrative practices or enforcement policies of the Administrator of the Wage

and Hour Division of the United States Department of Labor. (Answer, ECF No. 7, PAGEID # 55-57)

On February 21, 2022, Representative Plaintiff filed his Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs pursuant to 29 U.S.C. §216(b) ("Motion for Conditional Certification"). (*See* ECF No. 13). In the Motion for Conditional Certification, Representative Plaintiff requested that the Court conditionally certify the Action as a Collective Action under the FLSA and send notice out to similarly situated hourly, non-exempt employees who work/worked at Defendant's facilities across the United States.

On March 14, 2022, Defendant filed its Response in Opposition to Plaintiff's Motion for Conditional Certification (ECF No. 15). Representative Plaintiff filed his Reply on March 28, 2022. (ECF No. 16).

On September 30, 2022, the Court granted Representative Plaintiff's Motion for Conditional Certification. (ECF No. 18). In doing so, the Court conditionally certified a class of "All current and former hourly employees of Defendant whose payroll records reflect that they worked 40 or more hours in any workweek beginning 3 years preceding the instant Motion [which was filed on February 21, 2022] and continuing to the present and who (a) had to clock in/out to keep track of their work hours; (b) had unpaid meal breaks; or (c) received additional remuneration in addition to their hourly pay, including but not limited to safety bonuses ("Potential Opt-In Plaintiffs")." (*See* ECF Nos. 13, PAGEID # 66-67; ECF No. 18).

The Notice and Consent to Join were distributed to the 1,495 Potential Opt-In Plaintiffs, who had ninety (90) days to opt into the Action. In addition to Representative Plaintiff, one hundred and thirty-nine (139) individuals opted into the Action ("Opt-In Plaintiffs").

Thereafter, in order to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation, the Parties engaged in substantial efforts to resolve the

4

claims of the Representative Plaintiff and the Opt-In Plaintiffs. To prepare for these efforts, the Parties engaged in discovery. In particular, Defendant produced the time and payroll records for the Representative Plaintiff and the Opt-In Plaintiffs. Each of the Parties prepared their own damages model using this information.

Over the course of many months, the Parties worked diligently to reach a resolution. As part of those efforts, an initial demand was made on October 23, 2023. From that point up through and including December 22, 2023, the Parties exchanged their respective positions regarding the allegations of the Complaint, Defendant's defenses and affirmative defenses, and exhausted their efforts until they reached a resolution on January 10, 2024 as reflected in the Joint Notice of Settlement filed that same day. (*See* ECF No. 44).

### C.    The Settlement Terms

The Global Settlement Fund is the gross settlement amount of One Hundred Forty-Five Thousand Dollars and Zero Cents ($145,000.00), which sum will cover: (a) all Settlement Awards to Representative Plaintiff and the Opt-In Plaintiffs for alleged overtime damages; (b) Representative Plaintiff's Service Award; (c) all Representative Plaintiff's counsel's fees and costs; and (4) the Settlement Administrator's costs. (Ex. 2, Bryant Dec., ¶ 19; Coffman Dec., ¶ 14).

The Global Settlement Fund reflects, according to Plaintiff's Counsel's calculations, 176% of the calculated 2-year overtime damages with liquidated damages[3] resulting from the: (1) alleged failure to pay at employees' correct overtime rate when they received additional remuneration; (2) alleged underpayment from allegedly non-neutral, pre- and post-shift rounding; and (3) alleged

---

[3] The Global Settlement Fund also represents, according to Plaintiff's Counsel's calculations, approximately 77% of the alleged 3-year overtime damages with the same assumptions. The Parties have significant disagreement regarding whether a willful violation would be demonstrated and thus a 3-year statute would apply.

missed or interrupted meal breaks for a portion of Plaintiffs' shifts for those Plaintiffs subject to an automatic meal deduction policy. (Ex. 2, Bryant Dec., ¶ 20; Coffman Dec., ¶ 15).

In exchange for the total settlement amount and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and Representative Plaintiff and Opt-In Plaintiffs will release Defendant (and the Released Parties) from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, under the FLSA, the Ohio Acts, Article II, § 34(a) of the Ohio Constitution, or any other applicable federal, state or local wage-and-hour law, regulation, or rule relating to unpaid and/or untimely payment of wages, overtime, or compensation of any kind, any related common law and/or equitable claims (e.g., breach of contract, unjust enrichment, etc.), and any claims for liquidated damages, punitive damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and/or service awards. (Ex. 1, ¶ 22; Ex. 2, Bryant Dec., ¶ 32; Coffman Dec., ¶ 27). Further, Representative Plaintiff, in exchange for his Service Award, will also be agreeing to a general release of all claims against Defendant (and the Released Parties). (Ex. 1, ¶ 52; Ex. 2, Bryant Dec., ¶ 31; Coffman Dec., ¶ 26).

## III.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b). Court approval is warranted.

### A.   The Seven-Factor Standard Is Satisfied

A court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it finds that the settlement is "fair, reasonable, and adequate." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at \*4 (S.D. Ohio Sep. 25, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a collective action settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.*

Application of these principles to this Settlement demonstrates that approval is warranted.

### 1.    No Indicia of Fraud or Collusion

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Satterly*, 2020 WL 6536342, at *4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (Watson, J.). Here, the Settlement was achieved only after many months of arms-length and good faith negotiations between the Parties, after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. As such, because there is no indicia of fraud or collusion, this factor favors settlement approval.

### 2.    Complexity, Expense and Duration of Litigation Favor Approval

The policy favoring the settlement of collective actions applies here. Wage-and-hour cases are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them. *Gresky v. Checker Notions Co. Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *5 (N.D. Ohio Aug. 26, 2022) (citing *Satterly*, 2020 WL 6536342, at *5). Moreover, the Parties disagree over the merits of Representative Plaintiff's claims, including but not limited to, whether the rounding was impermissible, whether the alleged off-the-clock work occurred, whether it is compensable, whether meal periods were interrupted or missed at all, and whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides meaningful relief to the Representative Plaintiff and the Opt-In Plaintiffs promptly and efficiently, and now instead of at some unknown time possibly far off in the future.

### 3.    Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Defendant produced relevant timekeeping and payroll records, and both Parties used those same records to create their own damages model. Both Parties also conducted their own independent investigations of the claims.  As such, both of the Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Representative Plaintiff prevail on the claims, which allowed the Parties to negotiate a settlement based on facts and data. Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, were complex, and all aspects of the dispute are well-understood by both sides.

### 4.    The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but also recognize that protracted litigation will be uncertain in terms of duration, cost, and result. Moreover, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that Representative Plaintiff and the Opt-In Plaintiffs would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the settlement. *Satterly*, 2020 WL 6536342 at *6.

### 5.     Class Counsel and the Representative Plaintiff's Opinion Weigh in Favor Approval

The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. As recently observed with respect to Representative Plaintiff's counsel, they "have extensive experience with complex litigation including litigating class actions, FLSA actions, and other wage and hour claims." *Gresky*, 2022 WL 3700739 at *6. "These attorneys are each experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement." *Id.* The same is true here. Plaintiff's counsel supports the Settlement as fair and reasonable, and in the best interest of Representative Plaintiff and the Opt-In Plaintiffs as a whole. (Ex. 2, Bryant Dec., ¶ 25; Coffman Dec., ¶ 20). Further, Representative Plaintiff supports the Settlement and believes it is a fair and reasonable resolution. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference."  *Satterly*, 2020 WL 6536342 at *7; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor favors approval of the Settlement.

### 6.     The Reaction of Absent Class Members

If the Court approves the Settlement, only Representative Plaintiff and the Opt-In Plaintiffs will be bound by the Agreement.  Those who did not join the case will not be bound.

### 7.     The Public Interest

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement

conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). The public interest favors the settlement of collective/class action litigation, which is especially true in cases involving wage and hour claims because by their very nature, they inherently implicate the public interest. *Gresky*, 2022 WL 3700739, at *6 (citing *Wright*, 2018 WL 3966253, at *5). Here, rather than risk the uncertainty of continued litigation, the Settlement confers immediate benefits on the Representative Plaintiff and Opt-In Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Plaintiffs.

All individual Settlement Awards will be calculated proportionally on the alleged overtime damages during the applicable period. If approved by the Court, the Settlement will provide meaningful payments to Representative Plaintiff and the Opt-In Plaintiffs for alleged unpaid overtime compensation. The Global Settlement Fund reflects, according to Plaintiff's Counsel's calculations, 176% of the calculated 2-year overtime damages with liquidated damages[4] resulting

---

[4] The Global Settlement Fund also represents, according to Plaintiff's Counsel's calculations, approximately 77% of the alleged 3-year overtime damages with the same assumptions. The Parties have significant disagreement regarding whether a willful violation would be demonstrated and thus a 3-year statute would apply.

from the: (1) alleged failure to pay at employees' correct overtime rate when they received additional remuneration; (2) alleged underpayment from allegedly non-neutral, pre- and post-shift rounding; and (3) alleged missed or interrupted meal breaks for a portion of Plaintiffs' shifts for those Plaintiffs subject to an automatic meal deduction policy.  (Ex. 2, Bryant Dec., ¶ 20; Coffman Dec., ¶ 15). Each Settlement Award is that Plaintiff's proportional share of the Net Settlement Fund based on each Plaintiff's portion of the alleged overtime damages comprising of the Global Settlement Fund; however, each Plaintiff will receive at least Twenty-Five Dollars and Zero Cents ($25.00).  Accordingly, the Settlement Awards (and the method used for calculating same) are fair, reasonable and adequate. *See Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *4-5 (S.D. Ohio Dec. 2, 2016) (approving a settlement that represented approximately 55% of allegedly owed wages); *see also Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)).

### C.    The Service Award Is Proper and Reasonable

The Settlement provides for a service award of $3,500 to Representative Plaintiff. Courts routinely approve service awards in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).  Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such

as by actively reviewing the case and advising counsel in the prosecution of the case." *Fields v. KTH Parts Indus., Inc.*, No. 3:19-cv-8, 2022 WL 3223379, at \*6 (S.D. Ohio Aug. 9, 2022) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997)). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed Service Award of $3,500 to Representative Plaintiff as set forth in the Agreement is well within the range awarded by district courts in this Circuit. *See Satterly*, 2020 U.S. Dist. LEXIS 210868, at \*25–26 (approving service awards in various amounts from $2,500 to $15,000); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. LEXIS 11019, at \*16–17, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at \*21–22, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 U.S. Dist. LEXIS 179474, at \*17, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at \*20, 2014 WL 3447947 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action). Further, Representative Plaintiff attached his name to a publicly filed lawsuit against his former employer. *Satterly*, 2020 WL 6536342, at \*9. As such, the proposed Service Award to Representative Plaintiff is fair and reasonable. (Ex. 2, Bryant Dec., ¶ 31; Coffman Dec., ¶ 26).

D. **Plaintiff's Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  The FLSA's fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)); *see also Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *28 (S.D. Ohio May 30, 2012) (the fee award must be "adequate to attract competent counsel but . . . not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In *Gascho v. Global Fitness Holdings, Inc.*, 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed its long-standing rule regarding class- and collective-action fee awards. "When awarding attorney's fees in a class action," *Gascho* emphasized, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).  Courts have discretion to select the appropriate method of determining such fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.* at 279 (citing *Rawlings*, 9 F.3d at 516).

This Court, and other courts in the Sixth Circuit, commonly approve one-third fee awards in FLSA collective actions as one-third of the settlement is a "normal fee amount in a wage and hour case." *Satterly*, 2020 WL 6536342, at *10 (quoting *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.)); *see, e.g.*,

13

*Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (finding attorneys' fees in the amount of one-third of the total settlement amount are reasonable); *Adams v. Frontier R.R. Servs., LLC*, No. 2:19-CV-808, 2020 WL 9936704, at *2 (S.D. Ohio June 15, 2020) (finding attorneys' fees in the amount of one-third of the total settlement amount are reasonable); *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District.")). The Parties request that the Court approve Plaintiff's counsel's request for fees of one-third of the Global Settlement Fund as it is both "typical" and reasonable here. (Ex. 2, Bryant Dec., ¶¶ 35-36; Coffman Dec., ¶¶ 30-31).

In addition, Plaintiff's counsel is seeking $16,537.42 in costs reasonably incurred in prosecuting this matter. (Ex. 2, Bryant Dec., ¶ 37; Coffman Dec., ¶ 32). "Under the common fund doctrine, Plaintiffs' Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

## IV.   <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement and enter the Proposed Order attached as Exhibit 4.

Respectfully Submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Kelsie N. Hendren (100041)
1550 Old Henderson Rd.
Suite #126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com
khendren@mcoffmanlegal.com

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
4400 N. High St., Suite 310
Columbus, Ohio 43214
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Counsel for Named Plaintiff and those similarly situated*

**FISHER & PHILLIPS LLP**

*/s/ Richard A. Millisor*
Richard A. Millisor (0062883)
James M. Patrick (0088026)
Fisher & Phillips LLP
200 Public Square, Suite 4000
Cleveland, Ohio 44114
(440) 838-8800 - Telephone
(440) 838-8805 - Facsimile
rmillisor@fisherphillips.com
 jpatrick@fisherphillips.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)