IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Cyrus Carr, III, | * | |
| On behalf of himself and those similarly situated, | * | Case No. 2:21-cv-5140 |
| | * | Magistrate Judge Kimberly A. Jolson |
| Plaintiff, | | |
| v. | * | |
| Austin Powder Company, | * | |
| Defendant. | * | |

## ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

Cyrus Carr, III ("Representative Plaintiff") filed this action against Austin Powder Company ("Defendant") (collectively, Representative Plaintiff and Defendant are referred to as the "Parties") for alleged unpaid overtime wages and other relief under the Fair Labor Standards Act ("FLSA") and related state laws. (Doc. 1). Representative Plaintiff alleges that Defendant violated the FLSA by failing to pay production, manufacturing, and field employees of Defendant for all overtime due to (1) alleged non-neutral rounding of compensable hours that over time resulted in the underpayment of wages; (2) alleged unpaid, but interrupted, daily meal periods of thirty (30) minutes; and (3) the alleged failure to pay at the correct regular rate of pay during workweeks when employees worked overtime and received non-discretionary renumeration, including a Safety/Production bonus, in addition to their base hourly wage. *Id*. Defendant denies these allegations and asserts that it properly paid its production, manufacturing, and field employees, including Representative Plaintiff, for all overtime wages that were earned. This matter is before the Court on the parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice (Doc. 52). For good cause shown, the Motion is **GRANTED**.

The Court ordered the issuance of notice for this collective action, and a total of 140 employees, including Representative Plaintiff, have joined the case.[1] The Parties exchanged payroll and timekeeping records for Plaintiffs, Plaintiffs engaged a consultant to create a damages analysis, and the Parties engaged in lengthy settlement discussions and ultimately reached a settlement which they now move for the Court's approval.

Generally, the provisions of the FLSA are mandatory and can only be settled through either supervision by the Secretary of Labor or through approval by a district court of a suit brought pursuant to § 216(b) of the FLSA. *See Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)). To approve a settlement agreement, a court must conclude that it is a "fair, reasonable, and adequate" resolution of a bona fide legal dispute. *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (discussing a class action settlement under Federal Rule of Civil Procedure 23); *see also Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016) (applying the same factors to an FLSA settlement). Factors relevant to this determination include: (1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the plaintiff's likelihood of success on the merits; and (5) the public interest in settlement. *See, e.g., Clevenger v. JMC Mechanical, Inc.*, No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (citation omitted). Additionally, the Court must separately assess the reasonableness of any proposed award of attorneys' fees and costs, even when they are negotiated as part of the settlement. *See Vigna*, 2016 WL 7034237, at *4.

---

[1] Representative Plaintiff and all Opt-In Plaintiffs referred to collectively as the "Plaintiffs."

After a careful review of the proposed settlement as memorialized in the Collective Action Settlement Agreement and Release (the "Settlement"), the Court finds that the Settlement is a fair, reasonable, and adequate resolution of a bona fide legal dispute between the Parties.

There is a bona fide dispute in this case as the Parties dispute whether production, manufacturing, and field employees were not paid overtime wages as a result of the alleged claims Representative Plaintiff has asserted. There is no indication that the Settlement was reached by anything other than arms' length negotiations between counsel. The Settlement will avoid expensive litigation for both sides, including further formal discovery, dispositive motions, trial, and possible appeals. The Parties exchanged necessary information and data to assess the potential damages and construct a damage analysis.

Although the Parties dispute both the existence and amount of unpaid overtime, the Parties represent that the Global Settlement Fund reflects, according to Plaintiff's Counsel's calculations, 176% of the calculated 2-year overtime damages with liquidated damages[2] resulting from the: (1) alleged failure to pay at employees' correct overtime rate when they received additional remuneration; (2) alleged underpayment from allegedly non-neutral, pre- and post-shift rounding; and (3) alleged missed or interrupted meal breaks for a portion of Plaintiffs' shifts for those Plaintiffs subject to an automatic meal deduction policy. Each Plaintiff's individual settlement payment is his or her proportional share of the Net Settlement Fund based on each Plaintiff's portion of alleged overtime damages comprising of the Global Settlement Fund; however, all Plaintiffs will receive an individual settlement payment of at least Twenty-Five Dollars and Zero Cents ($25.00). The individual settlement payments are reasonable. *See Vigna v. Emery Fed.*

---

[2] The Global Settlement Fund also represents, according to Plaintiff's Counsel's calculations and before accounting for other payments from the Global Settlement Fund as set forth in the Settlement, approximately 77% of the alleged 3-year overtime damages with the same assumptions. The Parties have significant disagreement regarding whether a willful violation would be demonstrated and thus a 3-year statute would apply.

3

*Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *4-5 (S.D. Ohio Dec. 2, 2016); *McElroy v. Fresh Mark, Inc.*, No. 5:22-CV-287, 2023 WL 7130776, at *4 (N.D. Ohio Oct. 30, 2023) (approving as reasonable a settlement where the opt-in plaintiffs were receiving approximately 56% of the amount they were owed under a three-year statute of limitations). In addition, the service award of $3,500 to Representative Plaintiff is reasonable and consistent with service award amounts approved in other cases. *See, e.g., Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014).

Moreover, the agreed attorneys' fees represent one-third of the total settlement amount and are reasonable. *See Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District."); *Adams v. Frontier R.R. Servs., LLC*, No. 2:19-CV-808, 2020 WL 9936704, at *2 (S.D. Ohio June 15, 2020). It is also reasonable for Plaintiff's counsel to be compensated for their out-of-pocket costs of $16,537.42. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *7 (S.D. Ohio Nov. 25, 2019).

The Parties' Joint Motion (Doc. 52) is **APPROVED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. The Court retains jurisdiction over the action to enforce the terms of the Settlement.

**IT IS SO ORDERED**.

Date: April 23, 2024 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE